Harvey Ray GRANADO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–87–00494–CR.

Court of Appeals of Texas,
San Antonio.

March 31, 1988.

George Scharmen, San Antonio, for appellant.

Fred G. Rodriguez, Susan Scolaro, Barbara Hervey, Criminal Dist. Attys., San Antonio, for appellee.

Before BUTTS, REEVES and CHAPA, JJ.

OPINION

CHAPA, Justice.

Appellant Harvey Ray Granado was found guilty by the trial court for the offense of unauthorized use of a vehicle. The court found the enhancement portions of the indictment to be true and assessed punishment at 45 years' confinement. We affirm.

In his sole point of error, appellant attacks the sufficiency of the evidence to

support his conviction. Specifically, appellant contends the evidence is insufficient to establish that the complainant named in the indictment was the owner of the vehicle.

The indictment alleges as follows:

... on or about the 7TH day of JANUARY, A.D., 1987, HARVEY RAY GRANADO, hereinafter called defendant, did then and there intentionally and knowingly operate a motor-propelled vehicle, to-wit: AN AUTOMOBILE, owned by VINCENT DE MARTINO, without the effective consent of the owner; ...

The test in determining the sufficiency of the evidence to support a conviction is the same in both direct and circumstantial evidence cases. *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Crim.App.1984) (en banc). The standard of review requires that we view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Dickey v. State*, 693 S.W.2d at 387. Furthermore, the trial court as fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Limuel v. State*, 568 S.W.2d 309, 311 (Tex.Crim.App.1978).

The record reflects that on November 22, 1986, a white Chevrolet Camaro was discovered missing from the car lot of the Gillespie Motor Company ("Gillespie"). It was not until January 7, 1987 that police officers observed appellant driving the vehicle. After discovering that the vehicle was reported as stolen, the police officers placed appellant under arrest for unauthorized use of a vehicle.

■ It has consistently been held that it is the better practice to allege ownership on behalf of a corporation in a person acting for the corporation. *Eaton v. State*, 533 S.W.2d 33, 34 (Tex.Crim.App.1976); *Castillo v. State*, 469 S.W.2d 572, 573 (Tex.Crim.App.1971); *Walling v. State*, 437 S.W.2d 563, 564 (Tex.Crim.App.1969). Further, it is the employment relationship that determines whether a given individual is an "owner" under TEX.PENAL CODE ANN. § 1.07(a) (Vernon 1974).[1] *Compton v. State*, 607 S.W.2d 246, 250 (Tex.Crim.App. 1980), *cert. denied*, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981).

■ Vincent De Martino testified as follows:

Q: What is your occupation?

A: I'm a sales manager for Gillespie Motor Company.

\* \* \* \* \* \*

Q: All right. Were you the manager of that Gillespie Ford back on November 22nd of 1986?

A: Yes, I was.

\* \* \* \* \* \*

Q: All right. Now, as the manager of this Gillespie Ford, did you have care, custody control of the vehicles parked on that lot?

A: Well, they were under my realm of responsibility as the manager.

\* \* \* \* \* \*

Q: On January 7th, 1987, you were still the manager at Gillespie Ford, I assume?

A: On January 7th, yes, ma'am.

As manager of Gillespie responsible for vehicles, De Martino clearly had a greater right to possession than did the appellant.[2] *Dingler v. State*, 705 S.W.2d 144, 150 (Tex. Crim.App.1984) (en banc).

Appellant, relying on *Freeman v. State*, 707 S.W.2d 597 (Tex.Crim.App.1986) (en banc) and *Dingler v. State*, 705 S.W.2d 144,

---

**1.** § 1.07(a)(24) provides:
"Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. § 1.07(a)(28) provides:
"Possession" means actual care, custody, control, or management.

**2.** Appellant argues that there was no instruction on "greater right to possession" and therefore ownership cannot be established by that means. *Turner v. State*, 636 S.W.2d 189, 193 (Tex.Crim. App.1982). Appellant's reliance is misplaced, however, since trial in this case was to the court.

argues that the evidence is insufficient since appellant objected to any testimony that De Martino had greater right of control to the vehicle. Appellant directs this Court to the following part of the record on redirect examination of De Martino:

Q: At that point, at that point in time when you had reached maybe a verbal agreement with the insurance company, and yet then you found the car had been recovered, did you, Gillespie Ford, and you as their representative, did you have a greater right of control to that automobile than Harvey Ray Granado?

MR. BINDOCK: (counsel for defendant) Your Honor, I have to object to the multifarious nature of the question. It's assuming. She's asking him to assume things. She needs to ask the questions one at a time.

MS. SCOLARO: (prosecutor) I don't think there is more than one question.

MR. BINDOCK: Let's establish if there was a verbal agreement or was not. [sic]

We hold that the objection was insufficiently preserved as to De Martino's claim of greater right to possession. Further, the record reflects other statements without objection concerning the claim to greater right of possession, De Martino's managerial authority, and his responsibility over Gillespie's vehicles. Where the same evidence is admitted without objection, any error in the admission of the same is waived. *Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App.1986) (en banc).

Appellant finally contends that Gillespie's insurance carrier owned the vehicle on January 7, 1987, the date of the commission of the offense, and therefore no one from Gillespie could have been the owner on that date.

■ The record reflects that Gillespie reported the loss of the vehicle to their insurance carrier on November 24, 1986. On December 11, 1986, Gillespie, acting through one of its owners, F.W. Bitter, signed a proof of loss claim. In addition, on the same date, Bitter signed a document appointing the insurance company power of

attorney for Gillespie with respect to transactions involving title to the Camaro. The record is unclear, however, as to the date that title was actually transferred from Gillespie to the insurance company. Gillespie received payment on the claim on January 16, 1987.

De Martino testified as follows:

Q: On January 7th, 1987, you were still the manager at Gillespie Ford, I assume?

A: On January 7th, yes, ma'am.

Q: And did you give permission to anyone to use that car on that date?

A: On January 7th?

Q: January 7th, approximately six weeks after the car had been stolen?

A: I didn't know anything about the car, other than it was a stolen car. I didn't give any permission.

Q: You didn't give anyone permission to operate that car?

A: No.

Q: And the car, at that time, was still registered to be owned by Gillespie Ford?

A: Gillespie Motor Company, yes, sir.

Mary McElyea, the office manager for the insurance agency at Gillespie, testified as follows:

Q: Is it fair to say that after December the 11th of 1986, Gillespie Ford had no more interest in that Camaro, other than receiving a check for it?

A: Until we received payment, technically, we were still the owner.

Q: Okay. But at the same time you make an application to transfer title or the insurance company does that, is that correct?

A: Yes.

Q: Okay. And the only thing left for you to do is get payment?

A: Yes.

\* \* \* \* \* \*

Q: And eventually you did get paid on it?

A: Yes, in January, the 16th we got paid for it.

Q: What year?

A: Eighty-seven, this year.

    *    *    *    *    *    *

Q: And so far as you are concerned, in the middle of December, on the 11th of December of 86, you were out of the picture except for receiving the check?

A: Not until we were paid.

Q: Exactly. The only thing left to do was receive the check?

A: Exactly.

    *    *    *    *    *    *

Q: Earlier you testified that technically it was your understanding that Gillespie Ford was still the owner of the car until you received payment?

A: I would assume we would be, yes.

Q: You don't know whether the title is transferred or whether—

A: I don't know when they made the transfer. At the time when we were told the vehicle was recovered they asked if we wanted the vehicle back.

Q: So, your understanding is Gillespie Ford still owns the car?

A: We could have owned the car if we wanted to have it returned to us, yes.

    *    *    *    *    *    *

Q: And part of Defendant's Exhibit I, there is, I think the last page there is a receipt:

A: A receipt.

Q: Which shows you received the money on January 16th?

A: January 16th.

Q: Okay. So up until that date, you all still owned the car. You could have had it back if you wanted?

A: If we wanted, yes.

It is clear that Gillespie owned the car on January 7, 1987. Therefore, the State's evidence was sufficient to prove ownership as alleged in the indictment. Appellant's point of error is overruled.

The judgment is affirmed.