Morgan HARRIS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 12–96–00309–CR.

Court of Appeals of Texas,
Tyler.

Dec. 31, 1997.

Rehearing Overruled March 30, 1999.

Discretionary Review Refused
Sept. 30, 1998.

Gerard W. Guerinot, Houston, for Appellant.

Elmer C. Beckworth, Rusk, for Appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Morgan Harris, Jr. ("Appellant") appeals his jury conviction for unauthorized use of a motor vehicle without the consent of the owner, for which he was assessed punishment at ten years' imprisonment. He assigns six points of error. We **affirm.**

In his first point of error, Appellant complains that the State failed to present a timely indictment against him. Specifically, he maintains that when the State arrested him on November 3, 1993, but did not indict him until September 19, 1994, it violated a provision of the Texas Code of Criminal Procedure, which states the following:

> When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall

**622**

be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail.

TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989). Furthermore, Appellant argues that a discharge under art. 32.01 is a bar to any further prosecution for the offense charged and for any other offense arising out of the same transaction. TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989).[1]

■ The record reflects that on December 11, 1995, Appellant filed a pro se Motion in Bar in which he stated, "The State's attorney failed to present the Indictment to the appropriate court, which would have been the March Term not the September Term, as required by Art. 32.01 of the Texas Code of Criminal Procedure." In his prayer, he asked the court to issue a bench warrant for him to be brought before the court for oral arguments, to grant his motion in bar, and to order the State's attorney to remove the detainer placed upon him. Appellant wholly failed to ask the court to dismiss the indictment. Appellant's court-appointed attorney later filed four Motions to Quash and Dismiss Indictment and two Motions for Dismissal for Failure to Afford Constitutional Right to Speedy Trial. He never urged the court to dismiss the indictment for violation of art. 32.01 in any of those documents, nor did he argue Appellant's pro se Motion in Bar. Although we agree that the State did not timely indict Appellant, we hold that because Appellant neither urged dismissal of the indictment in his Motion in Bar at a pre-trial hearing, nor did he object to the trial court's failure to rule on his Motion, error was waived. See TEX.R.APP. P. 33.1(a)(1). We overrule point of error one.

In his second point of error, Appellant complains that the trial court erred in denying his Motion for Dismissal for Failure to Afford Constitutional Right to Speedy Trial. Although Appellant fails to specify upon what basis he is complaining, we will presume that he is alleging the denial of a speedy trial

under TEX. CONST. art. I, § 10 and U.S. CONST. amend. VI, as applied to the State under U.S. CONST. amend. XIV.

From a reading of the record, the offense of unauthorized use of a motor vehicle was committed on or about November 3, 1993. Appellant was jailed, but posted a cash bond on December 10, 1993. The Cherokee County Grand Jury returned the indictment in the instant case on September 19, 1994. On April 1, 1996, Appellant filed his first Motion for Dismissal. Trial was set for April 22, 1996, but was continued on the court's own motion. On July 25, Appellant filed his second Motion for Dismissal. Trial was reset for August 19, but was continued because Appellant's attorney was injured in an accident. The Motion was heard and denied on September 3, and trial finally commenced on September 16, 1996. Because of its bearing on prejudice which may have resulted from the delay, we note that at some point during the above-described proceedings, Appellant was arrested, tried and convicted of a separate offense.

■ Although the Texas and Federal rights to speedy trial are separate and distinct, interpretation and application of the Sixth Amendment right to speedy trial by the federal courts serve as a useful guide to the interpretation of the Texas constitutional right to speedy trial. See Harris v. State, 827 S.W.2d 949, 956–57 (Tex.Cr.App.), cert. denied, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); Chapman v. Evans, 744 S.W.2d 133, 135 (Tex.Cr.App.1988). In analyzing a speedy trial violation, we must utilize a balancing test of the following four factors: 1) length of delay; 2) reason for delay; 3) defendant's assertion of the right to a speedy trial; and 4) prejudice to defendant resulting from that delay. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); Deeb v. State, 815 S.W.2d 692, 704 (Tex.Cr.App.1991). No single factor is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Barker, 407 U.S. at 533, 92 S.Ct. at 2193. Rather, they are related fac-

1. We note that the Legislature amended art. 28.061 on May 26, 1997, rendering it inapplicable to art. 32.01.

tors and must be considered together with such other circumstances as may be relevant. *Id.* The standard of review in speedy trial claims is *de novo*. *Clarke v. State*, 928 S.W.2d 709, 713 (Tex.App.—Fort Worth 1996, pet. ref'd).

### LENGTH OF DELAY

 The length of delay is measured from the time the defendant is arrested or formally accused to the date of trial. *Ramirez v. State*, 897 S.W.2d 428, 432 (Tex. App.—El Paso 1995, no pet.). The length of delay is a triggering mechanism; there must be enough of a delay to be presumptively prejudicial before the other factors need be considered. *Id.* No specific length of time triggers a speedy trial analysis, but the Court of Criminal Appeals has noted that many courts have found that a delay of eight months or longer is prejudicial. *Harris*, 827 S.W.2d at 956; *see also State v. Empak, Inc.*, 889 S.W.2d 618, 623 (Tex.App.—Houston [14 th Dist.] 1994, pet ref'd).

 In the instant case, Appellant was arrested and under restraint of bond from November 3, 1993. His trial did not commence until September 16, 1996. We conclude that there was a delay of 34 months from arrest to trial. As a 34–month delay is sufficient to raise the issue, an analysis of the remaining three *Barker* factors is necessary. Once a court determines that the length of the delay triggers a speedy trial analysis or the State concedes the issue, it is the State's burden to excuse the delay. *See Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Cr.App.1983); *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Cr.App.1976).

### REASON FOR DELAY

 In the hearing on the speedy trial motion, the Assistant District Attorney testified that Appellant was not indicted for almost a year after he was arrested because the District Attorney believed that Bowie County was going to prosecute the case, along with other offenses arising out of the same incident. When the Bowie County

prosecutor informed officials of Cherokee County that he had no interest in prosecuting the case, the District Attorney's office took it to the Cherokee County Grand Jury for an indictment. The Assistant District Attorney further testified that there was confusion concerning another attorney's legal representation of Appellant, whether or not Appellant had a valid bond and whether a detainer had been placed on him. In addition, the case's first trial setting was continued by the court, with no objection from either party, and the second trial setting was continued at Appellant's request because of Appellant's attorney's injury. Although the Assistant District Attorney did not testify to it, his office announced ready for trial by filing a written Announcement on September 26, 1994.[2] Balancing the delay caused by the State's failure to seek a timely indictment, along with its failure to aggressively resolve the issues with which it was concerned, against Appellant's failure to object to the first continuance, as well as the continuance caused by defense attorney's injury, we conclude that this factor weighs against the State.

### ASSERTION OF RIGHT

Appellant maintains that the following letter dated March 28, 1994 from his first attorney, Floyd Freed, III ("Freed"), to the Justice of the Peace in Alto, Cherokee County, Texas, constituted a request for a speedy trial:

> Please find enclosed a Motion to Surrender Bond wherein Mr. Harris desires to surrender himself for the return of his cash bond. Mr. Harris is in the jail in Beaumont, Texas awaiting transfer to the Texas Department of Corrections upon charges arising from Harris and Jefferson Counties, Texas. Please bench warrant Mr. Harris to your county so that he may deal with his pending case in Cherokee County, Texas.
>
> Please remit his cash bond to Morgan Ashby Harris, Jr., care of me at the address above.

---

**2.** There is nothing in the record on whether the trial court initially sets cases for trial or if they are set upon request by the State or defendant.

Freed sent a similar letter to the District Clerk on October 26, 1994.[3] And as stated earlier in this opinion, Appellant, in his pro se Motion in Bar dated December 11, 1995, asked the court to return his bail and to issue a bench warrant for him to be brought before the court for oral arguments. It was not until April 1, 1996, that Appellant filed his first Motion for Dismissal for Failure to Afford Constitutional Right to Speedy Trial.

At the September speedy trial hearing, the Assistant District Attorney testified that Freed indicated that he was not representing Appellant other than in the matter of the bond. The State contends that since Freed did not represent Appellant generally, his letters could not and did not constitute requests for a speedy trial. In addition, the State maintains that Appellant's failure to argue his Motion for Dismissal at the April pre-trial hearing weighs heavily against Appellant. We agree. We also conclude that Appellant's pro se Motion in Bar was not a request for a speedy trial, but was rather an appeal to have his motion heard and his bond returned.

Appellant did not assert his right to a speedy trial until twenty-one days prior to his first trial setting, and he then failed to urge it before the court. His Motion was finally urged three days before trial. Although a defendant's failure to assert a speedy trial claim earlier in the process does not waive his right to a speedy trial, the failure to assert that right in a more timely manner suggests that the defendant did not actually want a speedy trial. *Holmes v. State*, 938 S.W.2d 488, 491 (Tex.App.—Texarkana 1996, no pet.). We hold that this factor weighs against Appellant.

## PREJUDICE RESULTING FROM THE DELAY

The final factor, prejudice, must be assessed in the light of the interests which the speedy trial right was designed to protect: 1) to prevent oppressive pre-trial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility

that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

> The Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982).

As to the first interest, it is apparent from the record that before his trial Appellant was incarcerated, first in a county jail and then in the Texas Department of Criminal Justice—Institutional Division, for an unrelated conviction. Regarding the second and third interests, there was no testimony as to anxiety on Appellant's part due to the pending action, nor that his defense was prejudiced by the delay. At the pre-trial hearing, the defense attorney argued that if Appellant had been given a timely trial, he could possibly have already served out his time. It was not until Appellant filed his supplement brief with this court that he presented evidence that Freed, when he wrote the letters to the justice of the peace and the district clerk, wanted "Mr. Harris to receive concurrent credit for his period of incarceration should he be convicted in his new charge and to invoke his right to speedy trial therein." This offer of evidence was untimely, however, since it was made only upon appeal. Appellant's attorney also asserted that Appellant did not know what was going on during the period of time before trial and that he "wanted to get this matter taken care of in a timely manner." Neither Appellant, nor anyone else, testified at the hearing on his Motion to Dismiss as to any prejudice that he suffered due to the delay.

---

3. By the time this letter was written, Appellant was incarcerated in the Texas Department of

Criminal Justice, Institutional Division in Beeville.

■ The standard in Texas to show prejudice for speedy trial purposes is not actual prejudice but some showing of potential prejudice resulting from the delay. *Chapman*, 744 S.W.2d at 137. Even so, we find that there was not sufficient evidence produced to show potential prejudice to the defense for speedy trial purposes. Concluding that Appellant showed minimal, if any, prejudice by the delay, this factor weighs against Appellant.

Balancing the factors set forth in *Barker*, we agree with the trial court that Appellant was not deprived of his right to a speedy trial. Point of error two is overruled.

■ In his third point of error, Appellant contends that a portion of the State's final argument at punishment was improper. The complained-of argument is as follows:

Ladies and gentlemen, you are the ones that set the standard for Cherokee County, Texas, no Harris County. You need to send a message to all the Morgan Harrises of the world, "Don't drive a car from Cherokee County, and don't commit any offenses in Cherokee County, because we are tired of repeat offenders, and we're going to give them the maximum." It's your choice. What message do you send to the Morgan Harrises of the world? "We'll give you something in the middle," or, "If you're going to commit crimes, stay out of this county, or we're going to lock you up and throw away the key, as far as the law will allow."

The State asks for 10 years, but you're the ones that set the standard. It's up to you. You set the standards. The State requests 10 years.

Appellant asserts that because the above argument is a violation of his constitutional rights, the sentence obtained therefrom is a nullity.

■ In general, the approved areas of jury argument are summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and a plea for law enforcement. *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Cr.App.1996). Although we conclude that the prosecutor's argument constituted a plea

for law enforcement, we do not reach that issue since Appellant did not object to the State's argument at trial. A defendant's "right" not to be subjected to erroneous jury argument is one of those rights that is forfeited by a failure to insist upon it. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Cr.App. 1996). We hold, therefore, that Appellant's failure to object at trial to the State's argument forfeits Appellant's right to complain about the argument on appeal. We overrule point of error three.

■ In point of error four, Appellant complains that there was a fatal variance between the indictment and proof. He asserts that since the indictment alleged ownership of the vehicle in an individual, but that the State proved instead that a car dealership owned it, the conviction cannot stand. Appellant's argument is without merit. Under Texas law, when ownership rests with a corporation, it is the better practice to allege ownership in a natural person. *Simpson v. State*, 648 S.W.2d 1, 2 (Tex.Cr.App.1983); *Granado v. State*, 749 S.W.2d 238, 239 (Tex. App.—San Antonio 1988, pet. ref'd). Furthermore, there are three ways in which ownership may be established in the named individual: 1) title to the property; 2) possession; or 3) a greater right to possession than the defendant. TEX. PEN.CODE ANN. § 1.07(a)(35) (Vernon Supp.1996); *Turner v. State*, 636 S.W.2d 189, 193 (Tex.Cr.App.1982)(opinion on reh'g). In the instant case, the State proved that Pearman Motor Company, a car dealership, owned the stolen vehicle. Bob Pearman testified that he was a co-owner and president of the corporation and that neither he nor anyone else at the dealership gave anyone permission to take the vehicle. He also testified that he had a greater right to possession of the vehicle than the person who took it off the lot. We hold that there was no variance between allegation and proof and overrule point of error four.

In point of error five, Appellant maintains that the trial court rendered Appellant's counsel ineffective by denying a motion for continuance. Because there is nothing in the record to support his contention that a continuance was requested and denied, there is

nothing for us to review. TEX.R.APP. P. 33.1(a)(1). We overrule point of error five.

■ Appellant complains in his final point of error that "the defendant was indicted by a grand jury suffering from a defect so fundamental that it was no longer a grand jury." In furtherance of this argument, Appellant maintains that TEX.CODE CRIM. PROC. ANN. art. 20.03 (Vernon 1977),[4] which allows the prosecutor to present cases to the grand jury, is unconstitutional. More specifically, he alleges that the practice of allowing the executive branch (the prosecutor), to declare what the law is to grand jurors, is a violation of the separation of powers doctrine. *See* TEX. CONST., art. II, § 1. The State responds with the argument that Appellant waived this complaint because he failed to object prior to trial on the merits as required by TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp. 1995). We disagree. A complaint that a statute constitutes an unconstitutional abridgement of the separation of powers doctrine is a complaint of fundamental error, and Appellant is not required to complain at trial in order to preserve error on appeal. *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Cr. App.1993); *Rose v. State*, 752 S.W.2d 529, 552–53 (Tex.Cr.App.1987).

■ A statute, such as art. 20.03, is vested with a presumption of validity and this court is required to construe the statute in such a way as to uphold its constitutionality if possible. *Rose*, 752 S.W.2d at 539; *Ely v. State*, 582 S.W.2d 416, 419 (Tex.Cr.App. 1979). Courts should not declare an act unconstitutional unless it is clearly made to appear in its enactment that the Legislature has exceeded its powers. *Lyle v. State*, 80 Tex.Crim. 606, 193 S.W. 680 (1917). And courts should not assume the Legislature

would intend an unreasonable result if the statute is capable of a construction that would prevent such a result. *Wade v. State*, 572 S.W.2d 533, 535 (Tex.Cr.App.1978). On the other hand, the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case. *Smith v. State*, 658 S.W.2d 172, 174 (Tex.Cr.App.1983). Consequently, if we determine that we are not required to reach the issue of constitutionality in this case, we are mandated to refrain from doing so.

■ In his brief, Appellant states that "Appellant has been promised the grand jury transcripts in this action but so far they have not been forthcoming." Although we would normally determine the constitutionality of a statute before doing a harm analysis, because there is no record of the grand jury proceedings, we hold that there is no record for review. It is not possible for this court to determine if the prosecutor did, in fact, "declare what the law is" to the grand jurors, which may or may not be a violation of the separation of powers doctrine. Nor can we determine if the error, if any, contributed to Appellant's conviction or punishment. TEX. R.APP. P. 44.2(a); *also see Rose*, 752 S.W.2d at 554. Consequently, we overrule Appellant's point of error six without addressing the constitutionality of art. 20.03 [5] and ***affirm*** the judgment of the trial court.

---

4. Art. 20.03 gives the attorney representing the State the authority "to go before the grand jury and inform them of offenses liable to indictment at any time except when they are discussing the propriety of finding an indictment or voting upon the same."

5. Although we do not reach the constitutional issue, we note that TEX.CODE CRIM. PROC. ANN. art. 20.05 (Vernon 1977) gives the grand jury the right to send for the attorney representing the State to ask his advice upon any matter of law. But the Legislature also provides the grand jury with the opportunity to seek and receive advice

from the court "touching any matter before them." TEX.CODE CRIM. PROC. ANN. art. 20.06 (Vernon 1977). In providing the grand jury, through the enactment of arts. 20.03, 20.05, and 20.06, with three ways in which to garner aid and advice in performance of their duties, it does not appear to us that the Legislative branch unduly interferes with the Judicial branch so that the Judicial branch "cannot effectively exercise its constitutionally assigned powers." *Ex parte Jones v. State*, 803 S.W.2d 712, 715 (Tex.Cr.App.1991)(quoting *Rose*, 752 S.W.2d at 535).