COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-362-CR
 
 
JACK HARRIS WOODS                                                          APPELLANT
 
V.
  
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 16TH 
DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Jack Harris Woods was convicted by a jury of four counts of indecency with a 
child and sexual assault of a child. For each count, the jury assessed 
punishment at twenty years’ confinement in the Institutional Division of the 
Texas Department of Criminal Justice. The trial court sentenced him accordingly. 
Appellant does not challenge his conviction, but in four points, Appellant 
complains about the admission of extraneous offenses and bad acts at punishment. 
Because we hold that the trial court did not abuse its discretion in admitting 
the evidence, we affirm the trial court’s judgment.
        In 
his second point, Appellant contends that the trial court erred by allowing 
Appellant to be sentenced on the basis of untrue or unreliable information, also 
violating his due process rights under the Fourteenth Amendment. Appellant did 
not raise this complaint at trial; he therefore failed to preserve it for 
appeal.[2]  We overrule Appellant's second point.
        In 
his third point, Appellant contends that the trial court erred in admitting the 
extraneous offense evidence because the State failed to give proper notice of 
its intent to use the evidence. Article 37.07, section 3(a)(2)(g), provides,
  
If the attorney representing the state intends to introduce an extraneous crime 
or bad act that has not resulted in a final conviction in a court of record or a 
probated or suspended sentence, notice of that intent is reasonable only if the 
notice includes the date on which and the county in which the alleged crime or 
bad act occurred and the name of the alleged victim of the crime or bad act.[3]
  

        On 
August 2, 2002, ten days before trial, in response to Appellant’s request made 
almost eleven months earlier, the State provided notice of its intent to use 
alleged incidences of kissing, indecency with a child, attempted sexual assault 
of a child, and sexual assault of a child that Appellant had committed in the 
fall of 1985. The State’s notice alleges only that the incidents occurred in 
“Fall 1985,” and it gives only the complainant’s name at the time of the 
offense, Stacey Newby, not her name as of the date of the notice, Stacey L. 
Rogers. Stacey Newby had grown up, gotten married, and changed her last name in 
the intervening seventeen years between the time of the alleged misconduct and 
Appellant’s trial on similar charges. The only address the notice provides for 
Stacey was Parker County, Texas.
        At 
punishment, the State called Stacey. The State explained that it used Stacey’s 
maiden name on its notice because “that was the name that [the prosecutor] 
figured would give the defense the most notice because that was her name at the 
time of the crime.” The trial court overruled Appellant’s various objections 
to the notice.
        In 
cases involving child complainants, or adults who were allegedly victimized as 
children, courts, including this one, have relaxed the requirement that the 
State provide notice of the exact date of the alleged offense, especially when, 
as here, the complainant herself does not remember an exact date.[4] We hold that the State’s notice, which provides the time 
period that the complainant recalled, the fall semester of 1985, her freshman 
year, substantially complies with the date requirement found in article 37.07, 
section 3(a)(2)(g) and provided reasonable notice to Appellant of the timing of 
the alleged offenses.
        Regarding 
Stacey’s name, as the trial court pointed out, the State should have provided 
Stacey’s entire name, including her maiden and married names, on the notice. 
But the prosecutor stated at the hearing that she put both names on the witness 
list and that she believed that Rogers was the name listed on the subpoena. 
Defense counsel did not contest these allegations. The clerk’s record does not 
contain the witness list, but it does contain multiple applications for 
subpoenas for Stacey. Each provides not only her married name, Stacey Leigh 
Rogers, but also her exact address. The first one was filed on February 14, 
2002, almost six months before trial began. Consequently, we hold that the 
notice substantially complies with the name requirement found in Article 37.07, 
section 3(a)(2)(g) and that it provided Appellant with reasonable notice of the 
complainant’s name. Because the notice substantially complies with the statute 
regarding both the date of the offense and the complainant’s name, the trial 
court did not abuse its discretion in admitting the evidence over Appellant’s 
objection of improper notice. We overrule Appellant’s third point.
        In 
his first point, Appellant contends that the trial court erred by admitting 
extraneous unadjudicated offenses at punishment, violating his due process 
rights under the Fourteenth Amendment, when the offenses had been no-billed, the 
same evidence was heard at trial that the previous grand jury had heard, and the 
statute of limitations had expired. In his fourth point, Appellant contends that 
the extreme time lapse between the occurrence of the unadjudicated offense and 
the offense on trial made it remote and that its probative value was outweighed 
by its prejudicial effect. We initially note that the record before us does not 
contain the grand jury transcripts concerning the extraneous offenses; we 
therefore do not address the argument that the grand jury heard the same 
evidence that the current jury heard.[5]
        Regarding 
Appellant’s arguments concerning the expiration of the statute of limitations, 
the no-bill, remoteness, and prejudice, Article 37.07, section 3(a) provides,
  
Regardless of the plea and whether the punishment be assessed by the judge or 
the jury, evidence may be offered by the state and the defendant as to any 
matter the court deems relevant to sentencing, including but not limited to the 
prior criminal record of the defendant, his general reputation, his character, 
an opinion regarding his character, the circumstances of the offense for which 
he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of 
Evidence, any other evidence of an extraneous crime or bad act that is shown 
beyond a reasonable doubt by evidence to have been committed by the defendant or 
for which he could be held criminally responsible, regardless of whether he has 
previously been charged with or finally convicted of the crime or act.[6]
 
        We 
review the admission of extraneous offense during the punishment phase under an 
abuse of discretion standard.[7]  As this court 
has already held, “The provisions of article 37.07 do not address the effects, 
if any, of a statute of limitations for previous criminal offenses nor do they 
address the staleness of bad acts.  The admissibility threshold given by 
the statute is relevance.”[8]  Other courts 
have expressly held that article 37.07 is not subject to any remoteness 
limitations.[9]  And the Texas Court of Criminal 
Appeals has held,
   
A Grand Jury's no-bill is merely a finding that the specific evidence brought 
before the particular Grand Jury did not convince them to formally charge the 
accused with the offense alleged. . . .
        . 
. . .
 
. . . . Today we expressly 
hold that misconduct left unadjudicated because the evidence may possibly be 
insufficient to formally indict is like any extraneous offense evidence 
introduced during the sentencing stage of a capital murder trial; if it is 
clearly proven, relevant, and more probative than prejudicial, it is admissible.[10]

As the Court of Criminal 
Appeals has pointed out, “Determining what is relevant . . . should be a 
question of what is helpful to the jury in determining the appropriate sentence 
for a particular defendant in a particular case.”[11]
        K.S., 
the complainant in the case before us, testified during the guilt-innocence 
phase of trial that she was fifteen and sixteen years of age when the offenses 
occurred. She was the drum major in the band at Denton High School, where 
Appellant was the head band director. Initially, Appellant kissed K.S. on the 
mouth in a dressing/costume room in the band hall. The next month, Appellant 
took K.S. to his house during school hours, where he hugged her, kissed her on 
the mouth, and unbuttoned her shirt. From April 2000 to November 2000, the two 
would meet at Appellant’s house during school hours, where they would undress, 
and Appellant would kiss K.S.’s breasts, touch her genital area, perform 
cunnilingus on her, and digitally penetrate her. At Appellant’s request, K.S. 
would perform fellatio on him. Appellant never penetrated her with his penis 
because he could not achieve an erection.
        Several 
months after the sexual activity stopped, K.S. told another male teacher what 
had happened. The other teacher confronted Appellant in K.S.’s presence. 
Without the other teacher telling him exactly what K.S. had said, Appellant 
admitted that what she had said was true but claimed that it was an isolated 
incident, that he was quitting his job, and that he and K.S. would both be able 
to put it behind them. He also begged the other teacher not to report the 
incident. After K.S. and the other teacher left Appellant, they reported 
Appellant’s actions to school officials. At trial, Appellant denied that any 
sexual activity took place.
        Stacey 
testified during the punishment phase that during the fall of 1985, when she was 
a fourteen-year-old freshman at Springtown High School, Appellant, her band 
director, gave her an open-mouthed kiss. Later, on several occasions, she 
testified, Appellant got Stacey out of class and took her to a band practice 
room, where he would press her up against the door, kiss her, and touch her 
breasts over her clothes. One day, Stacey testified, he took her into the 
resource choir room, where he took off her clothes, took off his own clothes, 
fondled her breasts, touched her genitals, placed her hand on his genitals, and 
digitally penetrated her. He attempted to penetrate her with his penis but could 
not because he could not achieve an erection. The State’s case based on 
Stacey’s complaints was no-billed by the Parker County grand jury.
        In 
addition to Stacey’s thirty-two pages of testimony at the short punishment 
hearing, the State introduced a portion of a transcript of a videotaped 
interview with Appellant, in which he claimed that Stacey “was just nuts,” 
that “no one had ever told [him] what the allegation was,” and that it had 
been “determined that [that alleged conduct] didn’t happen.” Appellant and 
his wife also both testified that Stacey’s allegations were false.
        Stacey's 
allegations of Appellant's misconduct approximately fifteen years earlier are 
substantially similar to the facts underlying Appellant's conviction in the case 
before us; the extraneous act evidence is therefore clearly relevant. Further, 
the jury charge contained an instruction that the jury should not consider the 
evidence unless it was satisfied beyond a reasonable doubt that the defendant 
had committed the extraneous bad acts and offenses.[12] 
Because the extraneous acts are relevant and the jury could not consider them 
unless it first found beyond a reasonable doubt that Appellant had committed 
them, whether the trial court in this case abused its discretion in admitting 
the evidence depends on whether it is unduly prejudicial.[13]
        Article 
37.07, section 3(a) is limited by rule 403 of the Texas Rules of Evidence. Rule 
403 provides for the exclusion of relevant evidence when its probative value is 
“substantially outweighed by the danger of unfair prejudice.”[14]  That is, relevant evidence admissible under 
article 37.07, section 3(a) is rendered inadmissible under rule 403 when its 
prejudicial or inflammatory effect substantially outweighs its probative value.[15]  A rule 403 objection requires that the trial court 
balance the probative value of the evidence against its potentially prejudicial 
effect.[16] In conducting the balancing test, the 
trial court considers, at a minimum: (1) the probative value of the evidence; 
(2) the potential to impress the jury in some irrational, yet indelible, way; 
(3) the time needed to develop the evidence; and (4) the proponent's need for 
the evidence.[17]
        Stacey’s 
testimony at the short punishment hearing was highly probative, given the 
similarity of the allegations she made to the allegations of the complainant in 
the current offenses. Stacey and the complainant in these cases were both band 
students at schools where Appellant was the band director. In each situation, 
Appellant’s misconduct progressed from kissing to disrobing to digital or oral 
penetration but not penile penetration. Stacey’s testimony was no more 
shocking than the testimony concerning the current offenses. The evidence of the 
prior extraneous conduct “certainly had a tendency to cause a jury to increase 
[Appellant’s] punishment. But that was its legitimate purpose. The value of 
the extraneous offense evidence was in permitting the jury to tailor the 
sentence to the defendant.”[18]  Appellant had 
applied for probation.  According to the evidence at guilt-innocence, when 
confronted by another teacher about the current offenses, Appellant claimed that 
what happened with K.S. was an isolated occurrence.  The State needed the 
extraneous offense evidence to show that Appellant should not receive probation.
        Based 
on our analysis, we hold that Stacey’s testimony was highly relevant with 
little potential to impress the jury in an irrational way.  It took very 
little time to develop but was important for the State to present in opposing 
Appellant’s application for probation.  We conclude that the testimony 
was admissible to aid the jury in assessing punishment.  The trial court 
therefore did not abuse its discretion in admitting the evidence under rule 
403.  Because the evidence was proper admissible evidence, its admission 
did not violate Appellant’s rights to due process.  We overrule 
Appellant’s first and fourth points.
        Having 
overruled all of Appellant’s points, we affirm the trial court’s judgment.
  
  
                                                                  PER 
CURIAM
  
  
PANEL F:   DAUPHINOT, 
WALKER, and MCCOY, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: January 27, 2005

 
NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  See 
Tex. R. App. P. 33.1(a); Heidelberg 
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); Mosley v. State, 
983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 
526 U.S. 1070 (1999); Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 
1996), cert. denied, 522 U.S. 827 (1997); Rezac v. State, 782 
S.W.2d 869, 870 (Tex. Crim. App. 1990).
3.  Tex. Code Crim. Proc. Ann. art. 37.07, 
§ 3(a)(2)(g) (Vernon Supp. 2004-05).
4.  See 
Sledge v. State, 903 S.W.2d 105, 107 (Tex. App.—Fort Worth), aff’d, 
953 S.W.2d 253 (Tex. Crim. App. 1997); see also Hohn v. State, 951 
S.W.2d 535, 537 (Tex. App.—Beaumont 1997, no pet.); Splawn v. State, 
949 S.W.2d 867, 870-71 (Tex. App.—Dallas 1997, no pet.).
5.  See 
Harris v. State, 986 S.W.2d 619, 626 (Tex. App.—Tyler 1997, pet. ref’d), 
cert. denied, 525 U.S. 1178 (1999).
6.  Tex. Code Crim. Proc. Ann. art. 37.07, 
§ 3(a).
7.  See 
Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996), cert. 
denied, 519 U.S. 1043 (1996).
8.  Tow 
v. State, 953 S.W.2d 546, 547-48 (Tex. App.—Fort Worth 1997, no pet.).
9.  Thompson 
v. State, 59 S.W.3d 802, 808-09 (Tex. App.—Texarkana 2001, pet. ref’d); Saldivar 
v. State, 980 S.W.2d 475, 504-05 (Tex. App.—Houston [14th Dist.] 1998, 
pet. ref'd); Barnett v. State, 847 S.W.2d 678, 679-80 (Tex. 
App.—Texarkana 1993, no pet.).
10.  Rachal 
v. State, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996).
11.  Rogers 
v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).
12.  See 
Huizar v. State, 12 S.W.3d 479, 483-84 (Tex. Crim. App. 2000).
13.  See 
Rachal, 917 S.W.2d at 807.
14.  Tex. R. Evid. 403.
15.  Cox 
v. State, 931 S.W.2d 349, 357 (Tex. App.—Fort Worth 1996), pet. dism’d, 
951 S.W.2d 5 (Tex. Crim. App. 1997); see Rogers, 991 S.W.2d at 
265.
16.  Montgomery 
v. State, 810 S.W.2d 372, 388-90 (Tex. Crim. App. 1990) (op. on reh’g).
17.  Id. 
at 389-90; see also Erazo v. State, 144 S.W.3d 487, 489, 492-96 (Tex. 
Crim. App. 2004) (applying Montgomery factors to hold photograph 
inadmissible at punishment).
18.  Fowler 
v. State, 126 S.W.3d 307, 311 (Tex. App.—Beaumont 2004, no pet.).