

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-209-CR

DERRICK PHILLIPE JACKSON                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

## OPINION

------------

### I. Introduction

Appellant Derrick Phillipe Jackson appeals from his convictions for theft and unauthorized use of a motor vehicle. In five points, Appellant argues that (1) the evidence is legally and factually insufficient to prove that Danny Leverett was the owner of the vehicle and that Appellant appropriated and operated the vehicle without the effective consent of Leverett, and (2) his convictions violate

the Double Jeopardy Clause because unauthorized use of a motor vehicle is a lesser-included offense of theft.  We modify in part and affirm as modified.

## II.  Factual and Procedural Background

On October 11, 2006, Appellant went to Neal Suzuki ("the dealership") and entered into a borrowed vehicle agreement for a Ford Focus.  The following day, Appellant returned the Focus to the dealership and stated that the Focus was not the car that he wanted to purchase.  Appellant then entered into a retail installment sales contract for the purchase of a Ford Taurus.  Although Appellant signed his legal name on the application and reference sheet, he signed "with honor and without prejudice" on the odometer disclosure statement, the agreement to provide insurance, the vehicle service agreement, the contract for the purchase of a vehicle, and the waiver form for credit life insurance.

After Appellant left the dealership, John Evans, a finance employee at the dealership,[1] realized that Appellant did not sign his legal name on the documents.  Several employees then attempted to contact Appellant on numerous occasions.  After Appellant refused to bring the Taurus back to the dealership, the dealership had the Taurus repossessed.

---

[1] At the time of trial, Evans was no longer working at the dealership.

2

Appellant was indicted for the offenses of theft and unauthorized use of a motor vehicle. On May 8, 2007, a jury found Appellant guilty of both offenses, and the following day, the trial court sentenced Appellant to 210 days in a state jail facility and a $1,000 fine for each offense, to run concurrently.

### III.  Double Jeopardy

In his fifth point, Appellant complains that his convictions for theft and unauthorized use of a motor vehicle violate the Double Jeopardy Clause. Specifically, Appellant asserts that, in his case, unauthorized use of a motor vehicle is a lesser-included offense of theft. The State concedes that unauthorized use of a motor vehicle qualifies as a lesser-included offense of theft. As such, the proper remedy is to reform the judgment to dismiss Appellant's conviction for the lesser-included offense.[2] *Johnson v. State*, 903 S.W.2d 496, 499 (Tex. App.—Fort Worth 1995, no pet.) (citing *Hoffman v. State*, 877 S.W.2d 501, 501–02 (Tex. App.—Fort Worth 1994, no pet.)).

---

[2] Although not addressed by Appellant, we further observe that the trial court did not orally pronounce the sentence for the offense of unauthorized use of a motor vehicle. *See McClinton v. State*, 121 S.W.3d 768, 770 (Tex. Crim. App. 2003) (noting that the oral sentence announced in open court is the sentence imposed).

We sustain Appellant's fifth point. Accordingly, we will modify the trial court's judgment to delete Appellant's conviction for unauthorized use of a motor vehicle. TEX. R. APP. P. 43.2(b).

## IV. Legal & Factual Sufficiency

In his first and second points, Appellant argues that the evidence was legally and factually insufficient to prove that Leverett was the owner of the Taurus. In his third and fourth points, he contends that the evidence was legally and factually insufficient to prove that he appropriated and operated the Taurus without the effective consent of Leverett.

### A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether

4

the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414-15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict

5

"often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

### B. Applicable Law

Section 31.03 of the Texas Penal Code defines the offense of theft. TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2008). The statute provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). Additionally, the statute provides in relevant part that "[a]ppropriation of property is unlawful if . . . it is without the owner's effective consent." *Id.* § 31.03(b)(1).

## C. Applicable Facts

At trial, Pauk Kirlew, an internet manager at the dealership, stated that on October 12, 2006, Appellant returned to the dealership and said that he did not want to purchase the Focus. Kirlew then showed Appellant a Taurus worth $15,000 and Appellant decided to purchase the Taurus. Appellant then filled out the application in Kirlew's presence. After Appellant filled out the paperwork, Kirlew took Appellant to Evans's office to sign the remainder of the legal documents. Kirlew then returned to the showroom floor.

Immediately after Appellant left with the Taurus, Evans called Kirlew into his office and showed him that Appellant had signed his name "with honor and without prejudice." Evans then called Appellant several times, but Appellant did not answer the phone.

Kirlew stated that he went to Appellant's house, called Appellant's cell phone, work phone, and Appellant's wife's cell phone, left numerous phone messages, and left messages with Appellant's neighbors.

He further stated that he called Appellant with a service that showed that Appellant's wife was calling Appellant. Kirlew stated that Appellant answered the phone, "Honey." Kirlew then identified himself and asked Appellant to bring the Taurus back to the dealership and sign the papers correctly. Appellant told Kirlew that he was harassing him and hung up the phone.

At trial, Kirlew acknowledged that the loan had already been approved when he walked Appellant over to Evans's office. However, he stated that the bank rejected the loan because of the signature. Kirlew stated that, although Appellant had consent to take the Taurus, such consent was withdrawn when Appellant did not sign his legal name.

Leverett, the dealership's finance director, stated that on October 12, 2006, he met Appellant on the dealership's showroom floor. He testified that three days later, Evans brought him Appellant's contract and said that Appellant did not sign it correctly. Leverett told Evans to call Appellant and tell him to come back to the dealership and sign his real name. Leverett testified that two days later, Evans stated that he could not get Appellant to come back to the dealership and so Leverett began calling Appellant.

Leverett stated that he talked to Appellant seven or eight times. Leverett said that the first time that he called Appellant, Appellant told him that "with honor and without prejudice" was his legal name. Leverett then told Appellant that he would have to bring the Taurus back because the bank was not going to accept the contract with that signature. Leverett stated that they continued talking for a minute and then Appellant hung up the phone. Leverett testified that he had several conversations with Appellant like that.

Leverett said that after approximately four or five days, he contacted a company to repossess the Taurus. Leverett stated that the Taurus was eventually repossessed from Appellant's house.

Additionally, Leverett testified that he only received a $1,000 down payment from Appellant for the Taurus. Leverett stated that he did not cash the check because it was the dealership's practice not to cash the down payment check until after a bank had paid for the vehicle, and in this case, the bank had rejected the contract.

Leverett stated that although Appellant had consent to leave the dealership with the Taurus, that consent was withdrawn once the signature was discovered. Leverett testified that the contract was not binding because it was not legally signed.

Evans testified that he first met Appellant when Appellant went into his office to sign the paperwork for the Taurus. Evans stated that he was concerned because Appellant's driver's license listed a New York address and his car insurance was issued in Florida. After speaking with his superiors, however, he was told that it was okay to proceed with the transaction.

Evans stated that Appellant signed his name "Derrick Phillipe Jackson" on the application and reference sheet. However, Evans said that Appellant signed his name "with honor and without prejudice" on the odometer disclosure

9

statement, the agreement to provide insurance, the vehicle service agreement, the contract for the purchase of a vehicle, and the waiver form for credit life insurance. Evans testified that he saw Appellant writing on the documents and assumed that he was signing his legal name. Evans further said that it was not a binding contract if Appellant did not sign his legal name. Appellant was in Evans's office for approximately ten to twelve minutes.

Evans testified that ten minutes after Appellant left the dealership, he went back in his office to review the paperwork and noticed that the documents were not signed correctly. Evans then went to Kirlew and told him that he needed to contact Appellant and have him come back to the dealership and re-sign the paperwork. Evans called Appellant's cell phone later that afternoon and left a message that Appellant needed to come back to the dealership. Evans did not have any contact with Appellant after he made the phone call.

Billy Addison Graham, a repossession agent at North Texas Recovery, testified that he received a request to repossess a car in Appellant's possession. Graham stated that he had the paperwork approximately three to four weeks and during that time he attempted on numerous occasions to repossess the Taurus. He said that he knocked on Appellant's front door at various times of

10

the day, left notices on the door, and waited at the house until someone returned. However, he stated that he never talked with anyone.

Finally, on November 29, 2006, Graham recovered the Taurus at Appellant's house. Graham stated that he talked with Frieda, Appellant's wife, and she handed him the keys to the Taurus, which was in the garage. After recovering the Taurus, Graham took it back to the dealership.

Ingrid Retzer, a detective with the White Settlement Police Department, testified that she spoke with Leverett and Kirlew regarding Appellant's theft of the Taurus. She further stated that she called Appellant's cell phone and talked to him. She said that after she identified herself and gave Appellant some information regarding herself, he hung up. Detective Retzer then called Appellant back and left a message stating that if he had the Taurus that he should return it or else an arrest warrant could be issued for him.

Detective Retzer stated that Appellant was arrested on November 20 at his job at D/FW Airport. She testified that she never went to Appellant's house because she was told that no one would answer the door.

Mike Odle, a captain in police operations with the White Settlement Police Department, testified that Appellant left a message on his office phone. Captain Odle stated that when he returned Appellant's phone call, he recorded the conversation.

11

During the phone conversation, Appellant told Captain Odle that Detective Retzer was threatening him. Captain Odle told Appellant that if he did not have a car that belonged to the dealership then he had nothing to worry about, but that if he did have the car, then he was going to have a warrant issued for his arrest. Appellant told Captain Odle that he did not know what he was talking about.

## C. Lack of Effective Consent

In his third and fourth points, Appellant contends that the evidence is legally and factually insufficient to prove that he appropriated and operated the Taurus without Leverett's effective consent.

The penal code defines "effective consent" as "consent by a person legally authorized to act for the owner." TEX. PENAL CODE ANN. § 31.01(3) (Vernon Supp. 2008). Consent is not effective if it is induced by deception or coercion. *Id.* § 31.01(3)(A). The penal code defines deception in relevant part as

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true[.]

12

*Id.* § 31.01(1)(A)-(B).[3]

Appellant signed the initial paperwork with his legal name. But, on the odometer disclosure statement, the agreement to provide insurance, the vehicle service agreement, the contract for the purchase of a vehicle, and the waiver form for credit life insurance, he signed "with honor and without prejudice." At trial, Evans stated that he thought that Appellant was signing his legal name on the documents. Further, when told repeatedly by the dealership's employees that the bank would not honor the contract with that signature, Appellant failed to return to the dealership to correct the paperwork.

Additionally, Appellant was aware on October 12, shortly after he left the dealership, that he no longer had the dealership's consent to drive the Taurus when Evans left Appellant a message on his cell phone that he needed to come back to the dealership and re-sign the paperwork. Both Kirlew and Leverett testified that they had phone conversations with Appellant telling him that he needed to bring the Taurus back and sign the paperwork correctly. Further, Detective Retzer stated that she spoke with Appellant and told him that he needed to return the Taurus to the dealership. Captain Odle also testified that he had a phone conversation with Appellant regarding the Taurus and that he

---

[3] The jury charge did not contain the definition of deception.

told Appellant that he needed to return the Taurus or an arrest warrant was going to be issued. During this conversation, Appellant told Captain Odle that he did not know what he was talking about.

The evidence is more than sufficient to prove that Leverett's consent was induced by deception. *See Rabb v. State*, 835 S.W.2d 270, 272 (Tex. App.—Tyler 1992, no pet.) (holding consent was induced by deception when the defendant misrepresented his address and employment on application, gave worthless checks for down-payment, and obtained proof of insurance with bad check).

After reviewing the evidence in the light most favorable to the verdict, we conclude that any rational juror could have found that Appellant did not have Leverett's effective consent to take the Taurus. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hampton*, 165 S.W.3d at 693. Additionally, the evidence supporting the conviction is not so weak, nor the contrary evidence so overwhelming, that the jury's verdict is clearly wrong or manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417. Thus, we overrule Appellant's third and fourth points.

### D. Owner of the Taurus

In Appellant's first and second points, he argues that the evidence is legally and factually insufficient to prove that Leverett was the owner of the Taurus. We disagree.

The penal code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (Vernon Supp. 2008). "Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39).

An allegation of ownership may be alleged in either the actual owner or a special owner. *Lewis v. State*, 193 S.W.3d 137, 140 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986). A "special owner" is an individual, such as an employee, who is in care, custody, or control of the property belonging to another person or a corporation. *Liggens v. State*, 50 S.W.3d 657, 660 (Tex. App.—Fort Worth 2001, no pet.); *see also Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993); *Roberts v. State*, 513 S.W.2d 870, 871-72 (Tex. Crim. App. 1974).

Proof of ownership can be shown by an automobile salesperson who has care, custody, and control of a new car. *Joshlin v. State*, 468 S.W.2d 826,

15

827 (Tex. Crim. App. 1971); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.08 (Vernon 2007) (stating that "[w]here one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either."). Accordingly, Leverett, as the dealership's finance director, was the proper owner of the Taurus.

Appellant contends that he had a greater right of possession to the Taurus because, although he signed the contract "with honor and without prejudice," the dealership could still enforce the contract. However, because Appellant did not have Leverett's effective consent to take the Taurus, he did not have a greater right of possession to the Taurus.

After reviewing the evidence in the light most favorable to the verdict, we conclude that any rational juror could have found Leverett was the owner of the Taurus. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Hampton*, 165 S.W.3d at 693. Additionally, the evidence supporting the conviction is not so weak, nor the contrary evidence so overwhelming, that the jury's verdict is clearly wrong or manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417. Thus, we overrule Appellant's first and second points.

## V. Conclusion

Having sustained Appellant's fifth point, we modify the trial court's judgment to delete Appellant's conviction for unauthorized use of a motor

16

vehicle. Having overruled Appellant's remaining points, we affirm the trial court's judgment as modified.

ANNE GARDNER
JUSTICE

PANEL: CAYCE, C.J.; GARDNER and WALKER, JJ.

PUBLISH

DELIVERED: August 29, 2008

17