ACCEPTED
06-14-00172-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/12/2015 4:04:42 PM
DEBBIE AUTREY
CLERK

**No. 06-14-00172-CR**

_____

**In the Court of Appeals**

**Sixth Judicial District**

**Texarkana, Texas**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

2/12/2015 4:04:42 PM

DEBBIE AUTREY
Clerk

_____

**Gerald Mac Lowrey, Appellant**

v.

**State of Texas, Appellee**

_____

**BRIEF OF APPELLANT**

Gary L. Waite
State Bar No. 20667500
104 Lamar Ave.
Paris, Texas 75460
Tel. (903) 785-0096
Fax. (903) 785-0097
garywaite@sbcglobal.net

ATTORNEY FOR APPELLANT

**Oral Argument Requested**

*Identity of Parties and Counsel*

The following is a list of all parties and all counsel who have appeared in this matter:

**Appellant**: Gerald Mac Lowrey

Attorney for Appellant in the trial court: G. Donald Haslam, 3140 Clark Lane, Paris, Texas 75460

Attorney for Appellant on Appeal: Gary L. Waite, 104 Lamar Ave., Paris, Texas 75460

**Appellee**: The State of Texas

Attorney for Appellee in the trial court: Laurie Pollard, 119 N. Main, Paris, Texas 75460

Attorney for Appellee in the trial court: Denton Walker, 119 N. Main, Paris, Texas 75460

Elected District and County Attorney: Gary D. Young, 119 N. Main, Paris, Texas 75460

# TABLE OF CONTENTS

List of Parties      ii

Table of Contents      iii-iv

Index of Authorities      v

Statement of the Case      1-2

Statement Regarding Oral Arument      2

Issues Presented      2

Statement of Facts      3-13

Summary of Argument      13-14

Argument and Authorities      15

Issue No. 1 (Restated)      15-21

The defendant is entitled to compulsory process to secure the presence of witnesses.

Issue No. 2 (Restated)      15-21

The trial court abused it's discretion in denying appellant's motion for continuance.

Issue No. 3 (Restated)      21-25

The trial court erred in holding the evidence to be sufficient to sustain the conviction because the evidence was insufficient to prove the identify of the victim

as alleged in the indictment.

**Issue No. 4 (Restated)**                                    **21-25**

The trial court erred in holding the evidence sufficient to sustain the conviction when there was a material and fatal variance between the name alleged and the name proved.

**Prayer**                                                        25

**Certificate of Service**                                        26

**Certificate of Compliance with Rule 9.4 (I)**                   26

**Index of Authorities**

*Araiza v. State*, 555 S.W.2d 746  (Tex Crim App 1977                        24

*Belton v. State* 7 S.W.2d 1076 (1928)                        20-21

*Bland v. State*, 152 Tex. Crim. 32, 211 S.W.2d 751 (1948)                        20

*Campos v. State* 317 S.W.3d 768 (Tex App–Houston [1st Dist], 2010)                        23

*Carter v. State*, 510 S.W.2d 323 (Tex Crim App 1974)                        24

*Castillo v State*, 469 S.W.2d 572 (Tex. Crim. App. 1971)                        23

*Jackson v. State*, 270 S.W. 3d 649 (Tex App. Fort Worth 2008)                        23

*Roberts v. State*, 513 S.W.2d 870 (Tex Crim App 1974)                        23

*Sturgeon v. State*, 106 S.W.3d 81 (Tex. Crim. App., 2003)                        18-19

*Trinidad v. State*, 949 S.W.2d 22  ( Tex. App. San Antonio, 1997)                        19-20

_____

IN THE COURT OF APPEALS

SIXTH DISTRICT

AT TEXARKANA, TEXAS

_____

GERALD MAC LOWREY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

TO THE HONORABLE COURT OF APPEALS:

Comes now the Appellant, Gerald Mac Lowrey, and submits this brief pursuant to the provisions of the Texas Rules of Appellate Procedure in support of his request that the Court reverse the judgement of conviction in Cause No. 25492.

## STATEMENT OF THE CASE

Appellant was charged by a two count indictment with (Count One) the offense of Theft of Property More than $1,500 but Less than $20,000 and (Count Two) Theft of Material, Aluminum or Copper or Bronze or Brass less than $20,000 (Clerk's Record [CR], p. 4). The state abandoned the first count of the indictment. Appellant was convicted by a jury and sentenced by the Court to two (2) years in the State Jail Division, (TDCJ) suspended for five years, and a fine of $1,000 on

August 6, 2014 ( CR, p. 95) .

Appellant gave timely notice of appeal, on August 12, 2014 (CR, p. 94). Appellate Counsel was appointed by the Trial Court on September 18, 2014 (CR, p. 102). Appellant's brief is due and will be filed on or before February 19, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

Appellate Counsel believes that oral argument would assist the Court in this case and requests oral argument on behalf of appellant.

## ISSUES PRESENTED

**Issue No. 1** The defendant is entitled to compulsory process to secure the presence of witnesses.

**Issue No. 2** The trial court abused it's discretion in denying appellant's motion for continuance.

**Issue No. 3** The trial court erred in holding the evidence to be sufficient to sustain the conviction because the evidence was insufficient to prove the identify of the victim as alleged in the indictment.

**Issue No. 4** The trial court erred in holding the evidence sufficient to sustain the conviction when there was a material and fatal variance between the name alleged and the name proved.

2

**STATEMENT OF FACTS**

Trial began on August 4, 2014. After voir dire, the Court took up several Motions including a Motion for Writ of Attachment for a subpoenaed witness, Raul Bueno in El Paso, Texas. The Court denied the writ, but said that he would take it up again the next day (Reporter's Record [RR] Volume [vol] 2, p. 58; 2nd Supplemental Clerk's Record ( 2d Supp.CR) pp. 3-5 ). The next day (August 5, 2014) appellant's attorney informed the Court that the subpoenaed witness, Mr. Bueno had agreed to appear the next morning. (RR, vol 3, pp. 12-13).

In opening arguments the state asserted that a representative of Paris Iron and Metal would testify that almost 700 pounds of copper was bought from appellant; that appellant was an employee of Joe Tex working for Joe Tex on May 1, 2013; that a bill of lading described the copper delivered by appellant as the same type of copper sold to Paris Iron and Metal. (RR, vol 3, pp. 19-20). The state asserted that Angie Dunavant, as a representative of Joe Tex, had a greater right to possession to the property than did appellant and that while the copper was in transit, Joe Tex was the owner, for all practical purposes. Appellant had permission to be in possession of the copper, but not to sell it for his own use. (RR, vol 3, p. 21).

Keith Draper, a patrol deputy for the Lamar County Sherif's office testified that on May 4, 2013, appellant made a report of a theft of 41 sticks of flat copper (RR, vol 3, p. 25). Appellant told him that he had also sold some scrap copper to Paris Iron and Metal (RR, vol 3, p. 26). The witness testified there was no conversation about the amount of scrap sold by appellant (RR, vol. 3, p. 33).

Joel Chipman, a Lamar County Sheriff's Officer, testified that the report of the stolen copper described it as being 1/4'' thick, 4" wide and 12 feet long, with a silver colored aluminum coating (RR, vol 3, p. 47). As part of his investigation the witness went to Paris Iron and Metal where he was shown twelve bars of copper of various widths, including 4 inch wide bars (RR, vol 3, p. 53; see also RR, vol 5,

States Exhibits 2 through 7). He testified that the bars were silver coated copper. (RR, vol 3, pp. 55-56). He retrieved a copy of the sale's slip and a photo of appellant taken by a Paris Iron and Metal employee (RR, vol 3, p. 56). Chipman testified that there was no wire or coils brought out by Paris Iron and Metal, only the items pictured in state's exhibits 2 through 7 (RR, vol 3, p. 60). The witness was told by appellant that he bought the bars from another driver in Kentucky. He did not know the name of the person and did not say how much he paid for the

4

copper (RR, vol 3, p. 68).

On cross examination Chipman testified that the widths of copper strips varied from 7 inches to two and a half inches wide. Five of the strips were 4" wide (RR, vol 3, pp. 77-78; 79). He measured one of the bars and determined it was 144" long, and all the copper strips appeared to be the same length (RR, vol 3, pp. 92, 93). All of the reported missing bars were 4" wide (RR, vol 3, pp. 93-94). The witness stated appellant initially told him that he got the copper from someone who worked at the phone company and when shown photographs he stated that he bought seven or eight sticks of copper from a truck driver in Kentucky for $200.00. (RR, vol 3, pp. 84-85).

Chipman testified that he considered the trucking company to be the victim of the crime, and that he talked to individuals with Hussey Copper, the sellers, but did not talk to anyone in El Paso where the load of copper was delivered. (RR, vol 3, p. 95).

Angie Dunavant, an employee of Joe Tex Xpress, (Joe Tex) a record keeper in the office, and custodian of the records, testified that Gerald Lowrey was an owner -operator driver for the company, who had worked for Joe Tex from 2010 through 2013. (RR, vol 3, pp. 112-115). When some cargo went missing from a

5

load delivered from Hussey Copper in Kentucky to Schnieder Electric in El Paso , appellant was terminated (RR, vol 3, p 115). She testified if something was lost or stolen, Joe Tex was financially responsible first, and under appellant's contract he was ultimately responsible for it (RR, vol 3, p 118). Dunivant testified that appellant technically had possession of the copper, but that she did not give appellant permission to dispose of the copper (RR, vol 3, pp. 122-123). The witness did not receive a complaint that the load was short from anyone in El Paso, but rather from Hussey Copper (RR, vol 3, p. 123). The bill of lading from Schnieder Electric shows there was an open pallet (RR, vol 3, p 126; Exhibit 14; see also Exhibit 12). There were copper bars 4" wide missing (RR, vol 3, pp. 126-127). Dunavant testified that there were bars of varying widths in the picture of copper sold by appellant, and testified that there were other boxes with widths other than 4" wide copper. However she did not receive any reports from either company [1] that appellant delivered copper to, that any other boxes were open for that particular shipment. (RR, vol 3, pp. 128-130, 131; Exhibit 12). She testified

---

[1] There was a delivery of copper by Appellant to two companies in El Paso, Schnieder Electic and Eaton Electric. Apparently nothing was reported missing in the delivery to Eaton, and there was no evidence presented concerning the copper delivered to Eaton.

that appellant had hauled copper from Hussey Copper more than 150 times  (RR, vol 3,  p. 135).

After a break, appellant's attorney informed the Court that Raul Bueno would not honor his subpoena, and the lawyer representing him had told appellant's lawyer he would not appear.  Based on the testimony of Dunavant there was an inference that other crates were open, appellant needed Bueno, a Schnieder Electric employee to rebut this testimony.   The Court again denied appellant's Application for a Writ of Attachment (RR, vol 3,  pp. 136-137; CR, p. 80). Appellant made a record that nothing in discovery  suggested that any boxes other than the one containing 4" x144" copper bars were missing, and since Dunavant had testified there were boxes containing other sized bars  shipped he needed this witness, who had inspected the load after the missing bars were discovered.  The Court suggested that the state and appellant enter into a stipulation concerning the other boxes (RR, vol 3,  pp. 138-139).  No stipulation was entered into, and appellant stated that the best person to testify was the receiver of the copper who inspected the load, and who was duly served  (RR, vol 3,  p 140).

On cross examination Dunavant testified that there was a handwritten note of "one pallet, missing material," written by the receiver, Schnieder Electric.  The

7

missing copper was 4" wide, and 144" long (RR, vol 3, pp. 144-145). There was no indication that any other boxes were tampered with or that other crate lids had been removed or other copper was missing from the shipment. The witness did not have any conversations with the other receiver, Eaton Electric, about missing copper (RR, vol 3, pp. 146-147). The witness did not know how many sticks of copper was in each crate, only that everything in one crate was missing (RR, vol 3, p. 148). The value to the missing copper was over $8,000.00, and insurance would not pay because the material was taken by someone who worked for Joe Tex (RR, vol 3, p. 149). The witness testified that appellant was required to maintain insurance to cover loss The witness stated that appellant was the insured and he paid for the insurance through Joe Tex (RR, vol 3, p. 154). Appellant also had $2,500 in escrow to cover losses (RR, vol 3, p. 157). The witness testified that since appellant was the contracted person on this load and the insurance fell under him, the loss was not covered. The truck that appellant drove was owned by him and financed through Joe Tex. (RR, vol 3, p. 161; see Defense Exhibit 1).

On redirect the witness testified that appellant had no ownership interest in the load he was carrying from Hussey to El Paso. (RR, vol 3, pp. 166-167). Over objection, Dunavant testified that there were other transports of bundles (of

8

copper) in addition to wooden boxes (RR, vol 3,  p 159).

The witness testified that there were no complaints before this incident about appellant. (RR, vol 3,  p 171).

Craig Skidmore testified that it is possible for a load to arrive at a destination and be a few hundred pounds short and no one would know the difference (RR, vol 3,  p. 188).

After  the State rested, appellant made a Motion for a directed verdict, arguing that the copper sold did not conform with what was reported missing.  The State argued that the  load had copper bars of varying widths (RR, vol 3,  pp. 202-203).   Appellant renewed his request to have the witness Bueno brought to Court because the state's theory was that there was copper from other crates that did not match the copper Schnieder reported was missing.  Appellant argued that it was important for the witness to come in and testify that nothing else was missing from the load.  Court denied   the request, but entered a limine order that state could not argue during closing that appellant removed  other widths of copper from other crates.  (RR, vol 3,  pp. 204-206)   The state objected to this, and appellant argued that limine order was not sufficient because the information was already before the jury, and asked for an attachment of the witness. (RR, vol 3,  pp.  208-209).

9

Appellant testified that he picked up a load of copper bars in Eminence Kentucky to deliver to Schnieder Electric in El Paso, Texas. He bought scrap copper from another driver about 40 miles from Eminence, Kentucky. Since he had this scrap copper he decided to stop in Paris, Texas to see his mother and to sell the copper he bought. (RR, vol 3, pp. 209-210). He stopped in Powderly, Texas, at the house of Lacrisha Woodall, his ex-daughter in law, borrowed her pickup, and, with Chad Lester and Chris Woodall took the copper he bought in Kentucky, along with another 80 pounds of copper wire to Paris Iron and Metal. After the copper was sold, appellant, Lacrisha, Chris, Chad, and Heather Sulsar, went to the casino. (RR, vol 3, pp. 216-219). Upon returning from the casino, he went to Paris in his tractor trailer truck, parked the trailer at the Exxon Station on the Loop, and went into Paris to visit his mother. He left Paris at 2:30 p.m. on May 1, 2013, and arrived in El Paso at 9:00 a.m. the next day. When he got to Schnieder Electric he discovered the copper was missing (RR, vol 3, pp. 224-225). He believes that Chris Woodall and Chad Lester left him and "the girls" while they were at the casino and went to Lacrisha's house where the truck was parked and stole the copper. Schnieder Electric was aware there was copper missing from the load, and he and Raul Bueno checked all the other cases and determined that only

10

one case was missing copper   (RR, vol 3,  p 227).  Appellant's attorney asked " after y'all looked into the crates, about other, if anything else, missing."  The state objected, stating that appellant could only testify about what he personally observed, not what Bueno observed.  Appellant's attorney  rephrased his question to ask if he personally observed other copper missing.  Appellant testified there was no other copper missing   (RR, vol 3,  p 228; p. 229).

Appellant made a report to law enforcement in Paris on May 4, 2014, and spoke to Sheriff's Deputy Draper .    He told the officer that copper had been stolen off his truck, and also told him that he had sold copper scrap at Paris Iron and Metal  (RR, vol 3,  pp. 232-233).

On May 17, 2013 appellant talked to Detective Chipman.   He told Chipman that some of the scrap copper came from his brother, and underground cable from his mobile home, and that some was bars that he bought from a guy in Kentucky (RR, vol 3,  pp. 236-237).  He denied taking the copper from the truck.

On cross examination he testified that he loaded his truck in Kentucky at 1:00 a.m., stopped at a truck stop 40 miles down the road and bought the copper between 1:30 a.m. and 2:00 a.m., and arrived in Paris fifteen hours later.
 (RR, vol 3,  pp. 245-247).

11

He testified that all of the copper, the bars, scrap and coiled wire was weighed together at Paris Iron and Metal. He bought the copper in Kentucky for $200.00 and sold all the copper for $1,896.00 (RR, vol 3, pp. 254-255).

The next morning, before testimony resumed, appellant's attorney filed a Motion for Continuance based on the non-appearance of the witness Raul Bueno. The trial court denied the motion (RR, vol 4, pp. 6-7).

Heather Sulsar testified that on May 1, 2013, she rode to the Casino with appellant , Lacrisha Woodall, Chris Wodall and Chad Lester in Lacrisha's pickup. (RR, vol 4, pp. 8-13). She testified that appellant left his truck at Lacrisha's house when they went to the Casino (RR, vol 4, p. 16).

After the parties closed, appellant's attorney reminded the Court of the limine order about not arguing that non 4" bars could have been taken from other boxes. The Judge told the State's attorney to approach the bench before making such argument (RR, vol 4, pp. 64-66)

In closing, the state argued that "the owners, his bosses, Hussey copper in Kentucky, the El Paso people, nobody said hey, help yourself if you want to sell some of these, go ahead. He didn't have permission to do any of that."

12

The state argued that the boxes were easy to get into, and in response to the evidence that nothing else was missing from other boxes, stated "Do you really think they are going to catch all of them. Do you really think that they caught some of those other boxes were light" (RR, vol 4, p. 92).

The jury found appellant guilty (RR, vol 4, p. 97)

After a punishment hearing, the trial court sentenced appellant to two years, probated for five years, and a $1,000.00 fine (RR, vol 4, pp. 125-126).

**Summary of Argument**

The trial court erred in not issuing a Writ of Attachment for a witness that had been subpoenaed by appellant and did not appear. The witness testimony was relevant and material. Appellant made a showing as to what the witness testimony would be. In this case, 4 inch bars of copper were reported missing from a crate on a truck load of copper. Appellant, the truck driver, sold copper bars in Paris, Texas that varied in width from 2 ½ inches to 7 inches wide. The state, asked witnesses if it was possible that other crates, with different widths of copper had been stolen, but not noticed or reported. The witness that appellant subpoenaed would have testified that he had inspected the load, and there was no other copper missing from

13

any of the other crates and all of the missing copper was 4" wide.   Appellant also filed a Motion for continuance, so that he could secure the witness for court.  The court abused it's discretion by denying the continuance.

The evidence is insufficient to sustain the conviction to prove the identity of the victim as alleged in the indictment, or alternatively there is a material and fatal variance between the name alleged in the indictment and the name proved.  The indictment alleges the victim as "Joe Tex Express."  There is no pleading  that Joe Tex Express is a corporation.  Documents introduced at trial   name the entity as "Joe Tex Xpres, Inc."  Angie Donavant testified that she was the bookkeeper record keeper and Chief Financial Officer  for "Joe Tex Xpress" (as reported by the Court Reporter).  Neither "Joe Tex" nor " Joe Tex Express" nor anyone else testified as to ownership  or lack of consent for appellant to take the copper .

If the court finds that the state adequately  proved that Joe Tex Express is a corporation, a special owner would need to be designated in the pleadings.   No one was designated as a special owner to be responsible for the copper allegedly taken from the truck driven by appellant.

14

**Argument and Authorities**

**Issue No. 1 (Restated)**

Appellant was entitled to compulsory process to secure the presence of witnesses.

**Issue No. 2 (Restated)**

The trial court abused it's discretion in denying appellant's motion for continuance.

**Argument and Authorities under Issues 1 and 2**

Appellant was charged with theft of copper. The state's proof was that fourteen copper bars, 4" wide and 144" long and weighing approximately 680 pounds was stolen from a crate in a truck load containing an unspecified number of crates with a total weight of approximately 43,000 pounds. The state alleged that appellant, a truck driver delivering the load from Hussey Copper in Eminence, Kentucky to Schnieder Electric Co. in El Paso Texas, took the copper bars from the crate, and presumably from other crates on the truck and sold them in Paris, Texas at Paris Iron and Metal. Appellant admitted that he sold copper to Paris Iron and Metal, but it was copper bars that he bought in Kentucky at a truck stop, and some copper wire that he had acquired from his brother and from a cable that he dug up at a mobile home he owned, and was not from the load of copper he was

15

delivering. The evidence was undisputed that the missing bars from the open crate were all 4" wide and 144" long. The evidence at trial was that the bars sold to Paris Iron and Metal varied in width from 2 ½ inches wide to 7 inches wide, and that some were 4 inches wide. There was some evidence, from Angie Dunavant, an employee of Joe Tex, that other crates (or bundles) contained copper bars of widths other than 4 inches.

When the delivery was made to Schnieder Electric in El Paso and it was discovered that a crate had been tampered with and there were missing copper bars from the crate, appellant and Raul Bueno, an employee of Schnieder Electric inspected the load to make sure that there was no other missing copper from any of the other crates or bundles.

On July 29, 2015, appellant subpoenaed Bueno to come to court to testify about the inspection that he made. Bueno did not show up. Trial began on August 4, 2014. After voir dire, the Court took up several Motions including a motion by Appellant for a Writ of Attachment for Raul Bueno. The Court denied the writ, but said that he would take it up again the next day (RR, vol 2, p. 58).

On August 5, 2014, trial on the merits began. Attorney for Appellant informed Court that he had been told by Court to make an oral Motion for Writ if it

16

was necessary. Appellant's attorney informed the Court that the subpoenaed witness, Mr. Bueno had agreed to appear the next morning. (RR, vol 3, pp. 12-13). Later, appellant's attorney informed the Court that Raul Bueno would not honor the subpoena, and the lawyer representing Bueno had told appellant's lawyer he would not appear ( See CR, vol 1 p. 80; RR vol 3 pp. 136-137).

The attorney informed the court that based on the testimony of Angie Dunavant, an employee of Joe Tex, there was an inference that appellant had taken copper from other crates , and that Bueno, an employee for Schnieder Electric would rebut this testimony. In addition to the Writ of Attachment, appellant filed a Motion for Continuance to allow time to secure the witness. The Court denied appellant's Application for a Writ of Attachment and Motion for Continuance (RR, vol 3, pp. 136-137; CR, p. 68).

Appellant made a record that nothing in discovery had ever been given suggesting that any boxes other than the one containing 4" x144" copper bars were missing, and since the witness (Donavant) had testified there were boxes containing other sized bars shipped that could have been taken by appellant, he needed this witness to rebut this testimony.

17

Additionally, the State argued in closing that appellant could have taken copper from other boxes or bundles on the truck, stating specifically, "[d]o you really think they are going to catch all of them. Do you really think that they caught some of those other boxes were light" (RR, vol 4, p. 92). Clearly, Raul Bueno was a very important witness for the defense.

To preserve error when a subpoenaed witness does not appear, the party must request a writ of attachment, which must be denied by the trial court, the party must show what the witness would have testified to; and testimony that witness would have given must be relevant and material. *Sturgeon v. State*, 106 S.W.3d 81, 82 (Tex. Crim. App., 2003). In *Sturgeon*, two men attacked and robbed the victim and stole his car. A day after the robbery, Sturgeon was arrested driving the victim's car. The victim identified the defendant in a lineup but failed to identify two passengers in the car, one of whom had the victim's identification cards. At trial, the defendant subpoenaed two alibi witnesses to testify that appellant was some thirty miles away when the robbery occurred. The witnesses initially showed up and were sworn in by the Court, but subsequently failed to appear. The trial court refused to issue a Writ of Attachment because there was no affidavit from the attorney or the defendant stating that either thought the witnesses

18

were about to leave the county.   The Court of Criminal Appeals reversed, and in it's discussion stated that no affidavit was necessary, only a record of what the witness' testimony would be.

In *Trinidad v. State*, 949 S.W.2d 22, 23 ( Tex. App. San Antonio, 1997) , absent witnesses were subpoenaed to testify for the defendant on the evening after the second day of trial.  The following day, when the witnesses did not appear, Trinidad requested a writ of attachment.  However, the trial court denied Trinidad's request for a writ of attachment stating that Trinidad failed to show sufficient reason to delay the trial.   Trinidad's attorney then dictated a motion for continuance into the record.  The trial court denied the motion for continuance noting that Trinidad did not seek the court's assistance in securing the presence of the witnesses the previous day and that there had been more than sufficient time to subpoena witnesses while the case was pending.  In it's discussion the Court of Appeals set forth the three requirements to preserve error when a subpoenaed witness does not appear: (1) the party calling the witness must request a writ of attachment that must be denied by the trial court; (2) the party must show what the witness would have testified to; and (3) the testimony that would have been given must be relevant and

19

material. *Trinidad* at 23. Trinidad fulfilled these requirements, and the Court of Appeals reversed for a new trial.

In the case before this Court, appellant fulfilled all of the requirements set forth in the above cases. He subpoenaed the witness in a timely fashion. When the witness failed to show, he requested a writ of attachment, and he set forth at length both what the witness would testify to and set forth an adequate showing of how the witness' testimony was relevant and material.

The state's theory of the case was that appellant stole copper bars from the truck load he was delivering to Schnieder Electric in El Paso, Texas, including bars that were not in the bundle that contained only 4" wide bars. In his bill of exceptions, his motion for continuance, and his motion for new trial, appellant set forth that the witness would testify that he inspected the entire load, and nothing was missing except from the box containing the 4" wide bars. Therefore any other copper bars missing could not have been taken from this load. While appellant testified to the inspection, Bueno was the only disinterested witness who could testify to this particular fact. See *Bland v. State*, 152 Tex. Crim. 32, 211 S.W.2d 751 (1948) (error to deny continuance to obtain attendance of defense witnesses who were "the only disinterested witnesses not related by blood or marriage to defendant."); *Belton*

20

*v. State* 7 S.W.2d 1076 (1928) (rule against granting continuances when additional testimony was only "cumulative" did not apply when defendant's wife was the only witness to testify at trial.). Clearly the trial court erred and appellant was harmed when the Court failed to issue a Writ of Attachment for the witness Raul Bueno. Based on the foregoing argument and authority, the court should reverse and remand this case for a new trial.

**Issue No. 3 (Restated**)

The trial court erred in holding the evidence to be sufficient to sustain the conviction because the evidence was insufficient to prove the identify of the victim as alleged in the indictment.

**Issue No. 4. (Restated)**

The trial court erred in holding the evidence sufficient to sustain the conviction when there was a material and fatal variance between the name alleged and the name proved.

<u>**Argument and Authorities under Issues 3 and 4**</u>

Count two of the indictment alleges in relevant part "that Gerald Mac Lowrey. . . did then and there unlawfully appropriate, by acquiring or otherwise exercising control over, property to wit: aluminum or bronze or copper or brass of

the value of less than $20,000.00 from Joe Tex Express, the owner thereof, without the effective consent of the owner and with intent to deprive the owner of the property." (CR, vol 1, p. 4).

Documents show that the trucking company, the alleged owner of the copper is Joe Tex Xpress, Inc. (See RR, Vol 5, State's Exhibit (sx) 14, the stamps thereon on each page, see also Defendant's Exhibit 1[contract between appellant and Joe Tex Xpress, Inc.]).

A.  Failure to allege or prove Joe Tex Express is a Corporation

There is no pleading that " Joe Tex Express" is anything  other than an individual person.  The witness who came to court, and testified concerning ownership, was Angie Dunavant.  She worked for Joe Tex Xpress.[2]  (RR, vol 3, p. 112).    The state, having alleged that an individual named Joe Tex Express was the owner, was required to bring forth this individual to prove ownership of the property.  Angie Dunavant  testified that she was the Chief Financial Officer, and was specifically asked if she had all the records for Joe Tex Trucking, to which she

---

[2] That is how the Court Reporter took down the testimony.  There is no indication that the witness testified as to now "Express" was  spelled.  In any event there is no testimony that Joe Tex Express was a corporation.

22

answered "yes." (RR, vol 3, p. 113). She then explained that appellant was an owner-operator truck driver for "our company." (RR, vol 3, p. 114).

Where one person is alleged in an indictment to own property, but it is shown to be owned by another, or by a corporation, the State has failed to prove ownership as alleged in a felony theft indictment. *Roberts v. State*, 513 S.W.2d 870 (Tex Crim App 1974). In *Roberts*, the defendant was caught loading chain from the rack of a truck cab into the back seat of defendant's car. The truck driver, Ernest Rosales, testified that he worked for the Dahlstram Corporation, that Jack Dahlstron was his boss. The alleged owner of the chains, Jack Dahlston, did not testify. Jack Dahlstrom was not shown to be the actual owner or the special owner. The state failed to prove it's allegations, and the case was reversed.

The usual practice where corporate ownership is alleged is to allege ownership in the employee who has custody and control of the property. *Castillo v State*, 469 S.W.2d 572 (Tex. Crim. App. 1971), *Jackson v. State*, 270 S.W. 3d 649 (Tex App. Fort Worth 2008); *Campos v. State* 317 S.W.3d 768 (Tex App–Houston [1st Dist], 2010). In this case, the State has failed to prove that Joe Tex Express is the owner of the property. Joe Tex Xpress Inc. is the owner. Further, while the state could have alleged Angie Dunavant as a special owner, it did not.

23

In *Carter v. State*, 510 S.W.2d 323 (Tex Crim. App. 1974), an embezzlement case, the Court of Criminal Appeals held that alleging ownership to be in a particular individual, whom proof showed to be president of a corporation, the State was required to prove that allegation. Proof that another individual was a special owner under a proper charge would have been sufficient. However the State did not do so, and, therefore, failed to prove its allegation of ownership, and reversal was required.

B. Joe Tex Express as Individual

If " Joe Tex Express" is an individual, there is no evidence that the property was taken without the effective consent of Joe Tex Express. In *Araiza v. State*, 555 S.W.2d 746, 747 (Tex. Crim. App. 1977), the state alleged the defendant burglarized the home of C. D. Loop while Mr. And Mrs. Loop were away. The Loops entrusted the care of their house to their two sons and their daughters-in-law. At trial C. D. Loop did not testify, nor did the State offer any evidence on whether C. D. Loop had given his effective consent to the appellant. The State called Mrs. Loop who testified she gave no consent, and C. D. Loop's son Leonard, who had been entrusted with the care of the residence during the Loops' absence, testified

24

that he had given no such consent to the defendant.[3] The court held that because of the variance between the allegation and proof of ownership and consent in the indictment, the state did not meet its burden of proving the allegations as laid out in the indictment, and accordingly reversed the judgment.

Based on the foregoing argument and authority, the court should reverse and render a verdict of acquittal for appellant.

*Prayer*

For the reasons contained herein, Appellant respectfully prays that this Court of Appeals for the Sixth District reverse this conviction and remand this case to the trial court for a new trial, or alternatively, reverse and enter a judgment of acquittal, and for such other relief as appellant may be entitled.

Gary L. Waite
104 Lamar Ave.
Paris, Texas 75460
(903) 785-0096
(903) 785-0097
garywaite@sbcglobal.net

By: /s/Gary L. Waite
    Gary L. Waite
    State Bar No. 20667500
    Attorney for Appellant

---

[3] In the case before this Court, Angie Dunivant testified that appellant technically had possession of the copper, but that *she* did not give appellant permission to dispose of the copper (RR, vol 3, pp. 122-123).

25

**CERTIFICATE OF SERVICE**

This is to certify that on February 12, 2015, a true and correct copy of the above and foregoing document was served on the County Attorney's Office, Lamar County, 119 N. Main, Paris, Texas 75460, by hand delivery.


/s/Gary L. Waite


**CERTIFICATE OF COMPLIANCE WITH RULE 9.4 (i)**

The brief filed in this cause complies with the word limitations of Tex. R.App. P. 9.4 (i) because the brief contains 5,212 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4 (i) (1).


/s/Gary L. Waite


26